UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BILAL SAPARALI UULU,

Petitioner,

v.

BRUCE SCOTT, Warden of the Northwest
ICE Processing Center, and
MARKWAYNE MULLIN, Secretary of the
United States Department of Homeland
Security,

Respondents.

CASE NO. 2:26-cv-01631-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

This matter is before the Court on Petitioner's Petition for a Writ of Habeas Corpus

("habeas petition"). Dkt. No. 1. Having considered the Petition, Respondent's Return

Memorandum (Dkt. No. 4), Petitioner's Traverse (Dkt. No. 7), additional evidence requested by

the Court (Dkt. Nos. 9–14; *see* Dkt. No. 8 (Order for Additional Information)), and the

relevant record, the Court GRANTS IN PART the habeas petition and ORDERS Petitioner's release.[1]

---

[1] Where used in the singular, "Respondent" refers to Respondent Mullin. Respondent Scott has not appeared.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

## I.    BACKGROUND

Petitioner Bilal Saparali Uulu is a 20-year-old citizen and national of Kyrgyzstan who lawfully entered the United States as a high-school-age student on an F-1 student visa on August 15, 2022. *See* Dkt. No. 1 at 4; Dkt. No. 6-2 (Department of Homeland Security ("DHS") Form I-213) at 2.[2] He resided first in Chicago, then relocated to Washington to attend Bellevue College beginning in 2023. Dkt. No. 1 at 4. In the fall of 2024, Petitioner failed to register for classes, and his F-1 status lapsed. *Id.* Petitioner attributes this failure to enroll to financial strain on his family stemming from fallout of the war between Russia and Ukraine. *Id.* Petitioner promptly spoke to school officials, who issued him a new Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, which certified his F-1 eligibility and allowed him to re-enroll in classes. *Id.* at 4–5. Petitioner re-enrolled in classes and, in April 2025, filed United States Citizenship and Immigration Services ("USCIS") Form I-539, Application to Extend/Change Nonimmigrant Status, in order to reinstate his F-1 nonimmigrant status. *Id.* at 5. He was on track to graduate from Bellevue College in the fall of 2026. *Id.* at 4.

Petitioner's studies were interrupted on March 24, 2026, when Immigration and Customs Enforcement ("ICE") agents stationed themselves outside of the Mercer Island Municipal Court, where Petitioner was appearing to answer a charge of driving on a suspended license, and followed and arrested him for violating U.S. immigration law due to the lapse in his student status a year and a half before. Dkt. No. 6-2 at 3; *see* Dkt. No. 5 (Jeon Decl.) ¶ 8. ICE had been aware of Petitioner's lapse in status for over a year at that point, and his petition for

---

[2] Many of the facts recounted herein come from the Petition itself. Others are drawn from hearsay contained within narrative portions of Petitioner's DHS Form I-213 (Dkt. No. 6-2) and the declaration of Deportation Officer Sooseon Jeon, who does not have firsthand knowledge of these facts but, rather, claims knowledge based on "information obtained from other individuals employed by ICE, and information obtained from various records and systems maintained by ICE" (Dkt. No. 5 ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact but does note that they appear to be uncontested by the Parties.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

reinstatement has been pending almost as long. Dkt. No. 6-2 at 3; Dkt. No. 1 at 1. The record does not reflect why ICE chose to arrest Petitioner after he had taken all steps to regularize his status. Petitioner has been detained at the Northwest ICE Processing Center since his arrest. Dkt. No. 1 at 5. On April 6, 2026, a bond hearing was held for Petitioner, at which Immigration Judge ("IJ") John Odell found that Petitioner poses a flight risk and denied him conditional release on bond or his own recognizance. *See* Dkt. No. 6-5 (Order of the Immigration Judge) at 2.

As of the month of this Order, Petitioner's reinstatement of status application has been pending without action for 15 months. He has complied with all requirements for reinstatement. Dkt. No. 1 at 5. In the interim, Petitioner has also applied for Special Immigrant Juvenile ("SIJ") classification based on his status (certified by the King County Superior Court) as a vulnerable youth. *See id.* at 6. SIJ classification presents a viable pathway to lawful permanent residence and eventual citizenship. *See id.* Petitioner has also applied for asylum. *Id.* at 6.

Petitioner filed the instant habeas petition in this Court on May 13, 2026, and it was fully briefed on June 2, 2026. However, the Court issued an order on June 18, 2026, requesting more information from both Parties "evidenc[ing] the Immigration Judge [(IJ)]'s finding at the April 16, 2026, bond hearing that Petitioner poses a flight risk." Dkt. No. 8 at 3. The Court noted that Petitioner's claim that this finding was legally erroneous was "a plausible claim and highly relevant," but that there was no evidence before the Court allowing it to evaluate the claim. Dkt. No. 8 at 1, 2. The Parties provided additional evidence on July 24, 2026, including a sworn declaration from Begaiym Kulanbaeva ("Ms. Kulanbaeva"), who is Petitioner's girlfriend and who attended the bond hearing (Dkt. No. 10), the complete immigration court record of filings related to the bond hearing (Dkt. No. 12), and the entire audio-recording that was made at the

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

bond hearing, on a physical disk (*see* Dkt. Nos. 13 (Notice of Filing CD), 14-1 (Praecipe to Notice)).[3] The matter is now ripe for consideration.

## II.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III.   DISCUSSION

The habeas petition asserts the following claims:

(A)   "Petitioner's Targeted Arrest and Continued Detention Demonstrate a 'Detain First, Justify Later' Approach in Violation of Due Process and the Government's Own Procedures" (Dkt. No. 1 at 6);

(B)   "The Immigration Judge Abused His Discretion in Denying Bond" (*id.* at 9);

(C)   "The Balance of Interests Under Mathews v. Eldridge Favors Release" (*id.* at 16);

(D)   "Petitioner's Detention Is Not Reasonably Related to Its Purpose and Violates Due Process" (*id.* at 18); and

(E)   "Continued Detention Is Excessive Given the Availability of Less Restrictive Alternatives" (*id.* at 19).

Petitioner also contends that the Court should not require him to exhaust his administrative remedies (specifically, an appeal of the IJ's bond denial to the Board of Immigration Appeals ("BIA")) because "[e]xhaustion of administrative remedies is not required where such remedies would be futile or incapable of providing meaningful relief" (*id.* at 20 (citing *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004))), and because "directing Petitioner to pursue additional administrative remedies would be futile" *id.* at 21.

---

[3] The Court appreciates the Parties' prompt and thorough responses to its Order.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

"Courts in this District have consistently held that, irrespective of other alleged legal errors, petitioners are not entitled to habeas relief when an IJ finds a separate basis for their detention and that basis is unchallenged." *Valdovinos v. Blanche*, No. C26-706, 2026 WL 1091282, at *4 (W.D. Wash. Apr. 22, 2026) (collecting cases). Because a legally sound denial of bond or conditional release creates a new lawful basis for detention, the Court must first consider Petitioner's claim that his bond proceedings were legally deficient. If they were not—that is, if the IJ's denial of bond was legally sound—claims relating to the unlawfulness of initial detention (such as Petitioner's claim A) become moot. This is because, while such claims might establish that Petitioner's *pre-hearing* detention was unlawful, it is his current detention that the Court must review. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968); *cf James v. Reese*, 546 F.2d 325, 328 (9th Cir. 1976) (where petitioner was presently serving criminal sentence, contention that he was wrongly denied bail "refers to a prior detention and is presently moot").

**A.     Abuse of Discretion / Denial of Due Process at Bond Redetermination Hearing**

Petitioner alleges that the IJ abused his discretion and denied Petitioner due process by making an arbitrary finding that Petitioner poses a flight risk without considering the required factors and relevant evidence. Dkt. No. 1 at 15, 17. Respondents argue that this Court lacks jurisdiction over Petitioner's challenge to the sufficiency of his bond hearing and should require Petitioner to exhaust his administrative remedies before seeking review in this Court. Dkt. No. 4 at 15–19. The Court considers these issues in turn.

**1.     Subject Matter Jurisdiction**

In general, the Court does not have jurisdiction to review discretionary bond decisions. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any

alien or the revocation or denial of bond or parole." However, Section 1226(e) does not "preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, No. C26-900, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (alteration in original) (quoting *Kharis v. Sessions*, Case No. C18-4800, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases)); *see also Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026) ("Claims of constitutional injury, such as procedural due process violations[,] are . . . reviewable by a district court.").

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner argues that his bond hearing "was legally deficient and constituted an abuse of discretion" (Dkt. No. 1 at 9) because the IJ's decision, which was issued in a boilerplate order with no narrative findings, "reflects a predetermined outcome rather than an individualized adjudication" and does not reflect "a reasoned application of law to fact" (*id.* at 10). Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because he challenges the legality of his immigration bond proceeding and the resulting detention. *See Loya Medina*, 2026 WL 1260848, at *5.

//

//

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

### 2.    Administrative Exhaustion

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner demonstrates one of the following *Laing* factors apply, which include: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

In the instant matter, Petitioner points to the *Laing* factors, arguing that administrative remedies would be "futile or incapable of providing meaningful relief." Dkt. No. 1 at 20 (citing *Laing*, 370 F.3d at 1000). As for futility, Petitioner argues that "directing Petitioner to pursue additional administrative remedies would be futile" because legally deficient bond denials are "systemic." *Id.* at 21. But even if Petitioner's (unsupported) assertion about systemic, unlawful

denials by IJs is correct, it does not logically follow that the BIA will not correct that error upon appeal. Without more, the futility argument is unconvincing.

As to inadequacy, though, the Court agrees with Petitioner that, if his detention is unlawful and his immediate release is required, even a successful BIA appeals process is no adequate substitute for the swifter redress available through the habeas writ. *See id.* at 22. A petition for writ of habeas corpus is "entitled by statute to special, preferential consideration to insure expeditious hearing and determination." *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954). This is for good reason: the Constitution cannot abide the prolonged confinement of a person who by law should be at liberty. Therefore, "[t]he application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000).

By contrast, the exhaustion of an administrative appeal of a bond denial typically takes "substantially longer" than six months. *See Soriano*, 2026 WL 969764, at *4 (finding in case where petitioner brought habeas petition challenging his bond denial that, "given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."); *see also Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months). With these current processing times, "administrative remedies are inadequate or not efficacious" for addressing Petitioner's claim. *Laing*, 370 F.3d at 1000.

Therefore, the Court waives the administrative exhaustion requirement.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

**3.    Merits of the Claim**

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following" :

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

The Immigration Judge who denied Petitioner's request for bond did not issue any written findings of fact or make any written record of the reasons for his decision. In a form order consisting only of checkboxes and an electronic signature, the IJ checked four boxes, indicating:

(1)    "ORDERED that the request for a change in custody status be denied. No bond."

(2)    "Respondent has failed to show that he is not a Flight Risk."

(3)    "Conditional release is: denied."

(4)    "Ability to pay considered."

Dkt. No. 6-5 at 2. The Court also does not have access to any contemporaneous record of the

proceedings and decision, even though audio recording was set up for the hearing and a recording of proceedings was provided to the Court. This is no accident: a contemporaneous record is nonexistent because, two minutes into the hearing, when the IJ realized no district court order had been entered requiring him to record it, he intentionally terminated the recording, ensuring that no record of the proceedings and findings (if any) would be made. Bond Hearing Audio at 1:25–2:13.[4] In light of the IJ's purposeful decision to cease a recording already in progress, thus guaranteeing that the record would be less complete than it might have been (and judicial review more difficult), Respondents' suggestion that Petitioner is to blame for the absence of documented reasoning is very poorly taken. *See* Dkt. No. 4 at 17 ("Petitioner's complaints concerning the lack of explanation in the short form bond order are the result of him not pursuing an administrative appeal.").

While the Court does not have access to a transcript or recording of the IJ's oral findings (if any were made), it does have the boilerplate order (Dkt. No. 6-5) and the complete record of filings made to the immigration court in relation to the bond hearing (Dkt. No. 12 (Administrative Record) (Sealed)). The Court also has the benefit of Ms. Kulanbaeva's sworn eyewitness declaration. Dkt. No. 10.

---

[4] The length of the recording made at Petitioner's bond hearing is two minutes and thirteen seconds. It includes attorney appearances and entry of exhibits and ends with the following exchange, beginning at 1:25, between the IJ and Petitioner's immigration attorney Richard Emhof:

**IJ:** So, uh, under Judge, let's see [unintelligible] Judge Peterson? Or Peters? Let's see. Gonna try to find the habeas order here. [Unintelligible asides between the IJ and an unidentified individual.] Oh, it's, maybe it's not, oh, maybe not.

**Mr. Emhof:** Oh yes, uh, yeah, the, he's, uh, he was lawfully admitted.

**IJ:** Oh, he's a s—yeah, ok, so there's no hab—are there any habeas orders that apply?

**Mr. Emhof:** Um, no, I don't, I don't think so.

**IJ:** I'm not gonna record the bond then. I just don't, I was confused. I thought this was a habeas bond, so I'm not going to record it. We're off, we're off the record. Or we're adjourned. Well, we're off the record. [End of recording.]

District courts in this Circuit frequently require immigration judges considering noncitizens in removal proceedings for release on bond to require the government to demonstrate, by clear and convincing evidence, that the noncitizen posed a flight risk or danger to the community. *See, e.g.*, *Zhou v. Scott*, No. C26-1779, 2026 WL 1830904, at *8 (W.D. Wash. June 25, 2026); *Martinez v. ICE Field Off. Dir.*, No. C26-1027, 2026 WL 1506123, at *4 (W.D. Wash. May 29, 2026); *Geler v. Blanche*, No. C26-481, 2026 WL 1251660, at *8 (W.D. Wash. May 7, 2026); *Quinonez Torres v. Hermosillo*, No. C26-76, 2026 WL 547591, at *11 (W.D. Wash. Feb. 23, 2026); *Delgado v. Rokosky*, No. C26-1460, 2026 WL 1481340, at *1 (D. Ariz. May 27, 2026); *Mendoza v. Noem*, No. C26-702, 2026 WL 927654, at *1 (E.D. Cal. Apr. 6, 2026). This "burden-shifting framework" derives from *Singh v. Holder*, in which the Ninth Circuit held that that standard applied in bond hearings for individuals subject to prolonged detention under 8 U.S.C. § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011)). Although aspects of *Singh* have been abrogated or called into question by subsequent Supreme Court decisions, *see id.*, its burden-shifting framework continues to be applied extensively throughout the Circuit, and the case is still discussed as precedential by the Ninth Circuit. *See, e.g.*, *Martinez*, 124 F.4th at 779.

District court orders requiring IJs to apply the *Singh* standard are binding on immigration judges and the BIA. *See id.* at 780 (where "the district court [had] ordered 'the government to show by clear and convincing evidence that [the petitioner] presents a flight risk or a danger to the community,' . . . the BIA properly noted that the government bore [this] burden[.]") At least one recent decision in this District suggests that the *Singh* standard still governs certain bond hearings in immigration court within this Circuit, even where no district court order explicitly directs an IJ to apply this standard, and an IJ errs in placing the burden on a noncitizen to prove

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

they are not a flight risk. *See Haidari v. Scott*, No. C26-1655, 2026 WL 1628663, at \*2 (W.D. Wash. June 5, 2026). However, *Matter of Guerra* places the burden on a noncitizen seeking bond to "establish to the satisfaction of the Immigration Judge and this Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." I. & N. Dec. at 38.

In this case, there is no record of the standard the IJ applied, beyond a checkmark placed on a boilerplate suggesting he assigned the burden (of unknown weight) to Petitioner to prove he was not a flight risk. *See* Dkt. No. 6-5 at 1 ("Respondent has failed to show that he is not a Flight Risk."). The written record on Petitioner's motion for bond, however, includes a thorough argument that Ninth Circuit decisions including *Singh* governed the hearing and required the government to carry the burden, with no rebuttal from the DHS attorney(s) assigned to the case. *See* Dkt. No. 12 at 140–41 (citing *Singh*, 638 F.3d at 1203–04; *Tijania v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005); *Casas-Castrillon v. DHS*, 535 F.3d 942, 951 (9th Cir. 2008)). In the briefing on this habeas motion, Petitioner's allegation that the IJ "failed to apply the governing legal standards" (Dkt. No. 1 at 8) goes unanswered by Respondent except for a citation to Matter of Guerra (Dkt. No. 4 at 9). But a decision of a Court of Appeals takes precedence, within the relevant circuit, over a competing opinion of the BIA—as the BIA itself has affirmed and reaffirmed. *See Matter of K-S-*, 20 I. & N. Dec. 715, 719–20 (BIA 1993) (citing, *inter alia*, *NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987) in discussing "a federal agency's obligation to follow the law of a circuit court"); *Matter of Anselmo*, 20 I. & N. Dec. 25, 31 (BIA 1989). There is no evidence that the government rebutted Petitioner's argument at his bond hearing that *Singh* required the government to bear the burden, and there is no evidence that the IJ considered that argument and rejected it in what Ms. Kulanbaeva describes as a "brief" hearing at which the IJ hardly referenced the materials before him. Dkt. No. 10 ¶ 10; *see*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

*id.* ¶ 4. The specific standard Petitioner argued the government was required to meet was proof "by a preponderance of the evidence (or, under Singh, by clear and convincing evidence) that he is a flight risk." Dkt. No. 12 at 141. Again, the IJ's Order contains no ruling on this request and there is no indication that he considered it. *See generally* Dkt. No. 6-5.

Therefore, the Court assumes, for the purposes of Petitioner's April 6, 2026, bond hearing only, that the government bore the burden to show, by at least a preponderance of the evidence, that Petitioner was likely to abscond if released.

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Here, because no opinion of the IJ is available, "the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [Petitioner] posed a flight risk." *W.T.M. v. Bondi*, No. C25-2428, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (alteration in original) (quoting *Garcia v. Hyde*, No. C25-585, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025))). The Court finds that it could not.

Petitioner's immigration attorney presented two briefs to the immigration court in connection with the bond hearing. *See generally* Dkt. No. 12 at 1–10 (Motion for Bond Redetermination); *id.* at 136–47 (Pre-Hearing Memorandum). Respondents did not respond to either brief or make any written filings beyond submitting, without argument, Petitioner's DHS

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 13

Form I-213. *See generally id.* In his briefs, Petitioner presented argument and evidence that "[e]very factor under the Matter of Guerra favors release." *Id.* at 9; *see also id.* at 143–44.

Petitioner, through counsel, addressed the *Guerra* factors as follows:

(1)   **Fixed address in the United States:** Petitioner has a fixed address in Bellevue, Washington. *Id.* at 2.

(2)   **Length of residence:** Petition has continuously resided in the Bellevue area since 2023. *Id.* at 143.

(3)   **Family and community ties:** While Petitioner does not have family in the United States, he has "deep community ties, extensive academic support, and a powerful institutional incentive to remain and appear." *Id.* at 2. A letter submitted by the President of the Kyrgyz Community of Washington State Foundation recounts Petitioner helping to organize cultural events, volunteering to teach Brazilian jiu-jitsu to younger community members, and remaining actively engaged in the community ever through his period of financial hardship. *Id.* at 139. He also has a mentor in Kenmore, Washington, who he has known since his childhood in Kyrgyzstan, willing to ensure his appearance and sponsor his bond (and with the financial resources to do so). *Id.*

(4)   **Employment History:** As an F-1 student, Petitioner's "work" is his education; his attorney discussed his enrollment as a college student in good standing and strong investment in completing his studies at Bellevue College. *Id.* at 143.

(5)   **Record of appearance in court:** Petitioner has no record of non-appearance and is actively engaged with the immigration court and USCIS. *Id.* at 143–44.[5]

(6)   **Criminal record:** Petitioner has no criminal convictions, and only a single criminal charge that was filed in King County District Court but dismissed before trial on the government's motion. *Id.* at 6–7.[6]

(7)   **History of immigration violations:** Petitioner entered the country lawfully and has an active reinstatement application pending related to his lapse in status. *Id.* at 144.[7]

(8)   **Attempts to flee prosecution or authorities:** None. *Id.* at 143–44.

---

[5] There is also evidence Petitioner appeared for both his bond hearing and a hearing on a municipal traffic infraction.

[6] The I-213 includes references to two other incidents of contact with police that did not result in charges. *See* Dkt. No. 6-2 at 2. It is not clear if any arguments were made at the bond hearing based on these references; however, neither is probative of flight risk, and the IJ did not find that Petitioner posed a danger to the community.

[7] The record contains neither evidence of any immigration violation besides Petitioner's lapse in student status nor any indication that his reinstatement application will not be approved. *See generally* Dkt. No. 9.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 14

(9) **Manner of entry to the United States:** lawful entry on a student visa, "demonstrate[ing] respect for the legal process and weigh[ing] heavily against a finding of flight risk." *Id.* at 144.

All of these arguments were supported by Petitioner's documentary evidence and letters of support, and none of these facts were contradicted by DHS Form I-213 (the only document the government filed). It is unclear from the record if the government attorney at Petitioner's hearing offered any argument at all; however, eyewitness Ms. Kulanbaeva recounts in her sworn declaration that "Based on what I observed at the hearing, no evidence was presented that Bilal would fail to appear in court." Dkt. No. 10 ¶ 3. Ms. Kulanbaeva recalls that the IJ "asked questions about when Bilal entered the United States," his "pending reinstatement application," and "whether he had worked, and whether he had a wife, children, or family members in the United States" but barely referred to the written record during the proceeding and "denied bond without explaining why the evidence submitted on Bilal's behalf was insufficient or what specific facts supported the finding that he was a flight risk." *Id.* ¶¶ 4, 5, 10. In fact, the IJ appears to have made no oral findings at all: "It was only after our attorney later obtained the Judge's Order that we learned that the stated basis for the denial was that Bilal was considered a flight risk." *Id.* ¶ 11.[8]

A review of the briefing in this case suggests that neither party has any inkling as to what evidence in the record formed the basis of the IJ's denial of bond. In fact, Respondents do not take a position on whether the bond hearing was legally sound, limiting their response on this claim to arguments that a recording or written order was not required, and that this Court should require administrative exhaustion instead of reaching the merits. *See* Dkt. No. 4 at 15–19. Petitioner's allegation that the IJ's "bond determination was arbitrary, legally erroneous, and an abuse of discretion" (Dkt. No. 1 at 15) goes completely unrebutted.

---

[8] If true, this fact, in combination with the barebones bond denial order, means the IJ violated applicable regulations by failing to inform the parties "orally or in writing of the reasons for" his decision. 8 C.F.R. § 1003.19(f).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 15

Ms. Kulanbaeva's declaration, the only direct evidence of what occurred at the bond hearing, indicates that the IJ may have focused narrowly on Petitioner's lack of employment and family in the United States. While an IJ "may choose to give greater weight to one factor over others," his choice to do so must be "reasonable." *Matter of Guerra*, I. & N. Dec. at 40. If the IJ based his flight risk finding only on Petitioner's lack of family and employment in the United States—circumstances likely shared by most young international students, whose F-1 visas prohibit them from working—while ignoring the extensive and apparently uncontested evidence that Petitioner has no history of flight, is a law-abiding college student strongly involved in his school and community, has every incentive to appear for all proceedings, and apparently only remains out of status due to USCIS's severe processing delay—that decision would not have been reasonable. In fact, any suggestion that Petitioner should have been employed, or that these factors alone mean Petitioner should be imprisoned during his removal proceedings, goes against Congress's intention as evidenced in the language of the INA. *See* 8 U.S.C. § 1101(a)(15)(F)(i) (authorizing F-1 visa "solely for the purpose of pursuing . . . a course of study"); *id.* § 1226(c) (mandatory detention provision for non-arriving noncitizens in removal proceedings, not requiring detention for international students); *Id.* § 1232(c)(2)(B) (providing that young adults who were apprehended upon arrival as unaccompanied noncitizen children "shall be eligible to participate in alternative to detention programs" and favoring placement in the "least restrictive setting available" in light of individualized danger and flight-risk determinations). So these alone cannot have formed the basis of a flight risk finding.

Beyond these insufficient factors, the Court cannot speculate as to what basis the IJ might provide if required to account for his finding. "Even in the absence of a contemporaneous record of Petitioner's bond hearing, . . . it is clear from the existing record in this case that the IJ's bond denial was constitutionally deficient, because there are no circumstances in which the IJ could

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 16

plausibly establish that Petitioner posed a flight risk." *W.T.M.*, 2026 WL 262583, at *4 (citing *Garcia*, 2025 WL 3466312, at *7). This is all the clearer where the government (who, here, filed no written materials beyond DHS Form I-213) should have borne the burden. The IJ simply could not, as a matter of law, have properly found that the preponderance of the evidence showed Petitioner was likely to abscond. Indeed—"no matter where the burden was placed—no reasonable fact finder could review the record before the immigration judge and conclude that Petitioner is a flight risk." *Haidari*, 2026 WL 1628663, at *3.

A review of recent cases in this District shows immigration judges performing incredible mental gymnastics to turn ordinary human experiences and behaviors into evidence of a risk of flight. A petitioner with an asylum petition that another IJ had granted—but the government had appealed—was found to be a travel risk because he was a recent arrival who had previously traveled internationally. Order on Petition for Writ of Habeas Corpus at 4, *Mamo v. Hernandez*, C26-1696 (July 7, 2026) (Lin, J.). A petite woman was found without explanation to be a flight risk *and* a danger to the community, presumably based on a hearsay statement that she "was not cooperative and resist [sic]" when possibly unidentified agents approached her from behind in a grocery-store parking lot while she was loading her car. *Vasquez Lopez*, 2026 WL 984151, at *1, 3 (Zilly, J.). A court reviewing the evidence presented at another bond hearing with no recorded reasoning or findings had "no other choice but to conclude that [a previously] recalled [bench] warrant was the basis for the IJ's denial of bond." *W.T.M. v. Bondi*, 2026 WL 262583, at *4 (Jones, J.). A man with no criminal history or record of failing to appear was found to be a flight risk because he entered the United States without authorization 25 years before and used a false social security number to pay his taxes. *Soriano*, 2026 WL 969764, at *5 (Estudillo, C.J.).

These gymnastics are not jurisprudence. Time and time again, courts have found that "no reasonable, impartial decisionmaker could conclude that" the record presented to an IJ supported

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 17

a flight risk finding, but the IJs entered the finding anyway. *Vasquez Lopez*, 2026 WL 984151, at *3. In some cases, like this one, the IJ entered such a finding even where "the record does not reflect *any* reason Petitioner would be considered a flight risk, and Respondents advance *no* reason the immigration judge might have considered." *Lima Gamez v. Hernandez*, No. C26-1104, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) (Tsuchida, M.J.) (emphases added). As the courts reviewing all these orders found, these IJs abused their discretion when they made these unreasonable findings.[9] Here, too, the IJ abused his discretion when he found, purportedly on the evidence presented to him (none of which is probative of flight risk), that Petitioner poses a risk of flight.

In light of the (intentional) absence of any record of the IJ's reasoning, "[t]he Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors." *Vasquez Lopez*, 2026 WL 984151, at *3. Here, where the IJ was presented with extensive evidence that all nine of the *Guerra* factors favor Petitioner and no evidence (and perhaps no argument) that any factor does not, "[t]he Court must conclude that the immigration judge failed to [consider the evidence before him], which constitutes an abuse of discretion." *Id.* at *3.

In sum, the IJ reached a conclusion untethered to the evidence before him and erred as a matter of law in finding Petitioner poses a flight risk and in denying him bond. Because of this, the proceeding was fundamentally deficient, and Petitioner was denied due process of law. Accordingly, the Court finds that Petitioner is currently in custody in violation of the laws or Constitution of the United States and is entitled to habeas relief.

---

[9] One caveat to this statement is required: in *Lima Gamez*, where the flight risk finding provided an alternative basis for a (legally erroneous) finding that the petitioner was subject to mandatory detention, the reviewing Court actually found that "[t]he absence of a contemporaneous record makes it impossible for the reviewing court to determine whether the immigration judge committed legal or constitutional error," and this absence itself invalidated the finding as a lawful basis for detention. 2026 WL 1382362 at *5–6. While this Court takes a different approach, the result is the same.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 18

### 4.    Appropriate Remedy

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. Here, Petitioner was denied due process of law and kept in detention based on an unsubstantiated (and incomprehensible) "flight risk" finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, 2026 WL 969764, at *6; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina*, 2026 WL 1260848, at *8–9 (same); *Vasquez Lopez,* 2026 WL 984151, at *3 (same). Accordingly, the Court orders Petitioner's immediate release.

## B.    Remaining Claims

Because the Court grants the habeas petition on the basis of legal error and denial of due process at his bond hearing, success on Petitioner's remaining claims would afford him no additional relief and the Court does not address them.

## C.    Request for Injunctive Relief

Petitioner requests, without argument, injunctive relief in the form of court-imposed conditions on any future attempt by Respondents to detain him. Dkt. No. 1 at 23. Because the standards for injunctive relief are not addressed, the Court does not consider this request.

### IV.    CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

> (1)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a)    SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b)    SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)    Petitioner's request for injunctive relief is DENIED.

(3)    Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The Court strongly encourages the Parties to meet and confer prior to the filing of any such motion.

Dated this 10th day of July, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 20